## MAYOT *v.* AUDITOR GENERAL.

1. TAXATION — SALES — DECREE — JURISDICTION — COLLATERAL ATTACK.

    A decree for the sale of land for taxes, founded on proceedings by which the court obtained no jurisdiction, may be collaterally attacked.

2. SAME—ASSESSMENT—SUFFICIENCY OF DESCRIPTION.

    Section 16 of the general tax law of 1882 (Act No. 9, Pub. Acts 1882) did not render the assessment of land by lot and block number sufficient, where there was no known plat by which the land intended could be located, and the reference to the plat pointed to no source of information which would enable the owner to locate the land.

3. SAME — ASSESSMENT — PAYMENT ON ERRONEOUS DESCRIPTION — ESTOPPEL.

    Payment by the owner, of taxes assessed to him by an erroneous description of the land intended to be covered, does not estop him from claiming that taxes previously assessed in like manner, as against an unknown owner, and returned unpaid, are invalid.

4. SAME—ASSESSMENT—DESCRIPTION OF LANDS—SUFFICIENCY.

    A description of lands by lot and block number of a certain addition, of which no plat was in existence, of which the city comptroller testifies that even by the aid of a plat made long afterwards he could not locate the lot except by the aid of a reference to some deed which would aid in fixing the location, is not sufficient to make taxes assessed thereon a lien on the lot intended.

Appeal from Bay; Shepard, J. Submitted April 27, 1905. (Docket No. 188.) Decided June 29, 1905.

Bill by Charles Mayot and Salmey Mayot against Perry F. Powers, auditor general, to set aside a sale of land for taxes. From a decree for complainants, defendant appeals. Affirmed.

*Elbert V. Ingersoll*, for complainants.

*John E. Bird*, Attorney General, and *Brakie J. Orr*, Prosecuting Attorney (*Charles W. McGill* and *George L. Hauser*, of counsel), for defendant.

MONTGOMERY, J.   On the 28th day of February, 1874, complainant Charles Mayot acquired title by deed from William Daglish and Mary Ann Miller to a piece of land, 100 feet by 150 feet, in section 33 of town 14 north, of range 5 east, in Bay county.   In 1885, the title was by appropriate conveyance vested in complainants as tenants by the entirety.   During the years 1874 to 1885, inclusive, Charles Mayot was assessed with the taxes on lots 8 and 9, block 4, Mary Ann Miller's Addition to the city of Bay City.   It is apparent that the assessors of Bay City, in assessing Mr. Mayot with this description, intended to cover the above-described property purchased of William Daglish and Mary Ann Miller.   During the same years —that is, from 1874 to 1885, inclusive—the taxes on lot 10, block 4, Mary Ann Miller's Addition, were not paid.   The taxes on this lot were assessed from 1875 to 1882, inclusive, in the name of "Non Resident," and from .1883 to 1885, inclusive, in the name of Mary Ann Miller.   The taxes for the years 1875 to 1881, inclusive, on lot 10, block 4, Mary Ann Miller's Addition, were rejected, and reassessed, with the taxes of 1882 and 1883, so that the lot is delinquent for the taxes of the years 1882, 1883, 1884, and 1885.   During the years 1886 to 1894, inclusive, a change in the description took place, and Charles Mayot was assessed with the taxes on the description "lots 9 and 10, block 4, Mary Ann Miller's Addition," and the taxes so assessed were paid by the complainants and appellees.   It appears from the record that Mr. Mayot is a foreigner, and unable to read English, and that he was not aware of this change in description in 1886.   In the year 1894 there was another change in description, and Mr. Mayot was assessed with the taxes on the following description :

"A piece of land 100 feet wide north and south, bounded east by Fitzhugh St., south by a line parallel to 25th St., and 150 feet north therefrom and west by Johnson and Lewis Second Addition" (Mary Ann Miller's Addition).

Mr. Mayot has paid the taxes assessed on this description from 1894 to the present time. The above description covers the same property as the description in the deed from William Daglish and Mary Ann Miller to Charles Mayot, spoken of heretofore. It therefore appears that Charles Mayot has paid, or caused to be paid, the taxes on two lots for nearly 30 years, under three different descriptions: From 1874 to 1885 on lots 8 and 9, block 4, Mary Ann Miller's Addition; from 1886 to 1893 on lots 9 and 10, block 4, Mary Ann Miller's Addition; and from 1894 to the present time on the mete and bound description given above, which correctly describes the property owned by the complainants and appellees. In the year 1887, lot 10, block 4, Mary Ann Miller's Addition, was sold to the State for the taxes of the year 1885, and in 1901 the same lot was sold to the State for the taxes of the years 1882, 1883, and 1884. The lot now stands on the State list subject to the payment of approximately $150, of which $31.54 is the amount of the original taxes, the remaining sum consisting of interest and other charges. In the year 1903 the complainants desired to sell their property, and for the first time became aware of the cloud on their title caused by the nonpayment of the taxes for the years 1882, 1883, 1884, and 1885 on the so-called lot 10, block 4, Mary Ann Miller's Addition. It appeared that Charles Mayot had been assessed with and had paid the taxes on lots 9 and 10, block 4, Mary Ann Miller's Addition, from 1886 to 1894, and this fact raised the apparent cloud on their title. It appears that no plat of Mary Ann Miller's Addition was recorded, and that no map or plat of the same was extant up to 1894, when the city engineer undertook to make a plat, being guided by conveyances which had been made by Mary Ann Miller,

but to the general public the location of lot 10, block 4, was, prior to 1894 at all events, unknown. The city comptroller testifies that he could now only locate it by reference to some deed of conveyance calling for its location by metes and bounds. He also testified that prior to 1894 there was not sufficient common knowledge of the so-called Mary Ann Miller plat to enable a person to correctly locate lots thereon. This suit was instituted in the court below for the purpose of setting aside the taxes for the years 1882, 1883, 1884, and 1885 on the so-called lot 10, block 4, Mary Ann Miller's Addition, and canceling the sales of the said lot to the State as a cloud on the title of complainants to the property originally purchased from William Daglish and Mary Ann Miller. The court below entered a decree setting aside the taxes and canceling the sales. Defendant appeals, and presents the single question whether the complainants are so far bound by the description of the land in the assessment as made that they cannot, after a decree against the land, attack such decree.

It is settled that, if the court obtained no jurisdiction in the tax proceeding, the decree is open to attack. *Rumsey* v. *Griffin*, 138 Mich. 413. If the only notice of the chancery proceedings failed to describe the land sufficiently, it is clear that no jurisdiction was obtained. It follows that the question which is vital is whether the description of this land as lot 10 of block 4 was sufficient.

The case is unusual in one respect. It is clear that these complainants have in fact been misled by these descriptions, and that they have paid their taxes assessed against them upon descriptions intended to cover this land, regularly and promptly. And yet the State is here insisting that this additional tax should remain a lien upon this land, relying upon a contention that the description employed was technically permissible, even though it in fact misled the complainants. It is obvious that it is inequitable that complainants should be compelled to pay taxes on one-half of this property a second time as a result of an

error in description which was admittedly the primary error of the assessing officer.    However, if the property described as lot 10 was properly so described, the contention of the State must prevail.

The statute under which these assessments were made, being the general tax law of 1882, contained two provisions in section 16 which bear upon the question, viz., subdivisions 4 and 6.    These two subdivisions read as follows:

"*Fourth.* In cases of lands platted or laid out as a town, city or village, or as an addition to a town, city or village, the same may be described by reference to such plat and by the number of the lots, and blocks thereof, whether such plat be recorded or not.    *    *    *

"*Sixth.* Lands may be designated by any description by which they may be known."    Act No. 9, Pub. Acts 1882."

Can it be said that this land was platted or laid out within the meaning of the first subdivision?    There is no record of any plat.    Record was not essential.    But more than this, there was no known plat by which the land intended by lot 10 could be located.    The bill so avers the fact, and the testimony supports it.    The plat appeared upon no map of the city.    There was no copy of the plat in any office of the city.    The reference to the plat pointed to no source of information, and none was open to the owner which would enable him to locate the land.

Some stress is laid upon the fact that later, when the complainant's lands were assessed as lots 9 and 10, he paid the taxes on them.    No *estoppel* arises from this act. If an estoppel could be claimed, it would be as effective against the assessing officers who assessed the land as lots 8 and 9 for many years.

It is true the payment of the tax on lot 10 may be considered as some evidence that complainant knew its location, but the evidence of complainant negatives any inference which may be drawn from it.    He caused the taxes to be paid upon the property assessed in his name, and did not trouble to read the description.    Was the land desig-

nated by any description by which it was known? It is clear that this question should be answered in the negative. The city comptroller testifies, as before stated, that even now, with the aid of a plat made long after (1894), he could not locate this lot except by the aid of a reference to some deed which would aid in fixing the location. Within the rule laid down in *Jackson* v. *Sloman*, 117 Mich. 126, this description was insufficient.

The decree will be affirmed.

MOORE, C. J., and GRANT, BLAIR, and OSTRANDER, JJ., concurred.